## MANCH GRISSOM v. THE STATE.

No. 5776.   Decided April 21, 1920.

Rehearing Denied June 9, 1920.

**1.—Murder—Manslaughter—Charge of Court.**

Where, upon trial of murder and a conviction of that offense, the evidence did not raise the issue of manslaughter, there was no error in the court's failure to charge thereon.

**2.—Same—Suspended Sentence.**

Where the conviction was for murder, it would necessarily follow that the trial court committed no error in refusing to charge on the law of suspended sentence.

87 Tex.—30

**3.—Same—Self-defense—Charge of Court—Sufficiency of the Evidence.**

In the absence of objections to the charge of the court in failing to submit a charge on self-defense, the matter cannot be considered on appeal, and the evidence being sufficient to sustain the conviction, there was no reversible error.

**4.—Same—Rehearing—Principals—Charge of Court—Manslaughter.**

Where, upon appeal from a conviction of murder, the record showed that defendant was acting · with others throughout the transactions, he having a shot-gun and they a rifle and a pistol, and there is no showing that his companions acted in self-defense, or any evidence raising manslaughter as to either of them, and the fact being that deceased was killed by one of said companions, and the testimony of defendant himself excluding the issue of manslaughter, there was no error in the court's failure to charge thereon, and there is no reversible error.

Appeal from the District Court of Wharton. Tried below before the Honorable M. S. Munson.

Appeal from a conviction of murder; penalty; fifteen years imprisonment in the penitentiary.

The opinion states the case.

*A. C. Allen*, for appellant.—On question of the court's failure to charge manslaughter: Green v. State, 58 Texas Crim. Rep., 428; Neyland v. State, 13 Texas Crim. App., 536; Tow v. State, 22 id., 175; Moore v. State, 15 id., 1.

On question of principals: La Fell v. State, 153 S. W. Rep., 884; Arwine v. State, 49 Texas Crim. Rep., 5; Hayman v. State, 47 id., 263.

*Alvin M. Owsley*, Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Wharton County, of murder, and his punishment fixed at fifteen years confinement in the penitentiary.

The facts showed that Simon Grissom was an aged negro, living on a farm in Wharton County, with his second wife and their three children, the oldest of whom was deceased, a boy about eighteen years of age. The old man seems to have had numerous older children by a former wife. On the day before the homicide, as we understand the record, there was a difficulty between the old man and deceased, in which deceased struck his father with a piece of tire iron, one or more blows, and the old man left the place, apparently going to the home of some of his older children, where he reported the occurrence. On the evening of the homicide he came back to his house, accompanied by three of his older boys and a grandson. The boys seem to have brought with them at least one shotgun, a Winchester rifle, and a pistol. In the melee which occurred, George Grissom, Simon Jr., and the deceased, Boots Grissom, were killed, and

appellant was wounded. Appellant and the grandson, Willie, or Lonnie Greer, were indicted for the murder of Boots Grissom. On this trial, appellant alone was tried, this conviction resulting.

Appellant's first and principal complaint is based on the failure of the trial court to submit the issue of manslaughter. An exception was taken to the main charge for such failure, and a special instruction asked presenting the issue. It appears from the charge asked, that appellant sought to have manslaughter predicated upon the proposition that if he was approaching the house wherein deceased was, and that some one from the inside of the house shot him, and thereby produced in his mind such a degree of anger, rage, resentment, or terror, as to render him incapable of cool reflection, and that he shot and killed deceased, that he would be guilty of no higher grade of homicide than manslaughter.

To make pertinent the submission of any legal theory of a case, it is well settled that there must be evidence to support such issue. There is no dispute as to the fact that appellant, his two brothers, his nephew, and his father, went to the place where deceased was, for the purpose of getting him; nor of the fact that the party had with them the weapons mentioned above. Looking to the testimony of the State, a case of murder seems well established. Examining that of the appellant, we find that he testified that when his party got near the house where Boots Grissom was, his brothers Si and George got out of the vehicles and went across the field, and when they got to the house, he heard the shooting; that he then got on a horse and loped up there; that when he went up there he had no gun; that he asked what was the matter, and that somebody shot him in the left side and hand; that he then went back to his buggy, some distance, got a shotgun, and putting it against his knee, shot back towards the house, he being then some seventy-five feet distant therefrom. No one was in sight when he fired, and he said that he shot just to let them know that he had a gun.

Appellant's father testified that he and appellant were some 350 yards from the house when the shooting began, and that appellant got on a horse and loped up to the house, and was there when he got there a little later. Lonnie Greer, who was also indicted, testified for the appellant, and stated that when he got near the Grissom house, appellant, Si, and George got out of their buggies and walked, and got to the house before he and his grandfather did; that when the shooting took place, all of the Grissoms were there.

The evidence was given in a rambling and disconnected way, but we have tried to give the salient points, bearing on the issue of manslaughter. We find ourselves wholly unable to see any evidence raising such issue. No uncontrollable emotion appears, and no circumstance is in evidence from which such emotion could arise. The parties were admittedly going out after Boots Grissom because of his assault upon his father the day before. They had no warrant,

though it was claimed that the sheriff had told one of them to bring Boots in. If the situation testified to by appellant and his father be literally true;—that is, that young Si and George had gotten out of their buggies, and left the rest of the party, and gone on to the house, and there engaged in a battle with Boots, and that appellant, hearing the shooting, jumped on a horse and loped up to the house, and was shot by some one, and returned to his buggy, got his shotgun and fired it toward the house;—this would not require a manslaughter charge. Deceased was not killed with number four shot from a shotgun as appellant said his were, and it was testified to by appellant's witness that Si and George had a Winchester rifle, and a pistol. Deceased was struck by a bullet that had gone through the wall of the house and went through both legs, apparently breaking the bone of one of them, from the effects of which he died within a short time. Under the charge of the court, and these facts testified to by appellant and his witnesses, unless he was a principal with George and Si, he would not be guilty of murder. That George and Si would have been guilty of murder, is apparent from the fact that the entire testimony shows that the attacking party were the aggressors, the shooting began from outside the house, and that one or the other of them stated that their purpose in going there was to kill Boots.

Taking the record as a whole, there seems no doubt of appellant's guilt. His half-sister said that he and George and Si were all shooting. Appellant had the only shotgun used, except a broken one used by Boots on the inside of the house, and after the battle, a number of shotgun shells were picked up around the house; and the testimony showed that a number of holes in the walls and doors of the house were such as would be made by a shotgun fired at close range. That appellant, as a mumber of the attacking party, fully aided and acted with George and Si in their deadly assault on Boots, seems fully proved.

From our view of the matter just disposed of, it would necessarily follow that the trial court committed no error in refusing to charge the law of suspended sentence. There can be no suspended sentence following a murder conviction.

Error is assigned because of the failure of the trial court to charge on self-defense, but this and other errors complained of in the charge, may be disposed of by the statement that no exception was taken to the charge of the court below as to any of these matters. We cannot agree with the contention that the evidence does not support the verdict. There seems no question that the parties, one of whom was appellant, were armed and after deceased, who was killed by them. The jury have passed on the evidence, and their finding has ample support.

The judgment will be affirmed.

*Affirmed.*

ON REHEARING.

June 9, 1920.

LATTIMORE, JUDGE.—In his motion for rehearing, appellant contends that the trial court should have charged on manslaughter. As we understand the record, the case was tried entirely upon the theory of principals, and that appellant was acting with his brothers throughout the transaction, he having a shotgun, and they a rifle and pistol respectively. There is no sort of claim that the brothers of appellant acted in self-defense, or that there is any evidence raising manslaughter as to either of them; nor do we think that there is any evidence seriously questioning the fact that deceased was killed by being shot by one or the other of the brothers of appellant.

Laying aside the overwhelming testimony of the State, that appellant was present during all of the shooting, and acting with his brothers—shooting into the house with his shotgun, as they fired into it with their rifle and pistol; forgetting that appellant had the only shotgun on the outside of the house on the fatal night, and that two 12-gauge shotgun shells were picked up, lying just east of the house, and others just north of it, and that the witnesses who went out and examined the premises immediately afterwards, said there were two large holes through a door in said house, that seemed to have been made by a shotgun, and that from their experience such holes could not have been made with a shotgun when fired from a distance of more than fifteen or twenty feet;—leaving this mass of testimony out of consideration, and looking at the case alone from the standpoint of the testimony of the appellant, and such testimony as is undisputed, in order to determine the issues raised, we find that he testified that he went with his brothers and father that afternoon, knowing that they were going out to get Boots Grissom, who was the deceased; that when they got within a short distance of the house, his brothers Si and George, with their arms, got out of the buggy, and walked up a ravine or slough, and that presently, and at a time when he was about 300 yards from the house, he heard the shooting, and went loping up there on a horse. He says it was dark at that time, and that when he got up there he could not see any one, and he asked what was the matter, and "somebody" shot him in the hand, arm, and side, and that he whirled; that his father had come up with the buggy, and he ran out to the buggy and got a shotgun, and put it on his knee, and shot back towards the house. He stated that he was about as far from the house when he fired as "to the back of this place," and it was agreed that this was about seventy-five feet. Asked why he shot, appellant stated that he shot to let them know he had a gun. He also said that when he got to the house, the firing was from the opposite side. He did not claim anywhere that deceased shot him, nor that he shot deceased, nor that he shot in self-defense, nor for any other purpose except as stated by him, to let them know he

had a gun. He said he did not see any one when he shot, and did not aim at any one. His gun was loaded with number four shot. Old man Simon Grissom, father of appellant, testified as a witness for hiim, and said that when he got in the house after the shooting was over, he found deceased lying under a bed behind a barricade of pillows and plank. The testimony shows that deceased had been shot through the right thigh, the ball shattering the bone and going through the left leg also. It seems so incredible that a shotgun, loaded with ·No. 4 shot, fired at a distance of seventy-five feet from the wall of a building, could penetrate that wall and inflict such a wound upon the deceased as that which killed him, that no one could believe but that the fatal shot was fired by others than appellant, provided his story upon which manslaughter is sought to be predicated, was true    Not one of the witnesses who examined the premises after the shooting said there was a single shot hole of any character from the inside going out through the walls. Under his own testimony, and that of the other witnesses, the most that appellant could claim, would be on his part, that he was not acting as a principal with them, and was not guilty of any offense at all. Of course, under the mass of testimony offered by the State, showing that appellant was present and participating in all of the shooting, it was claimed by the State, that he was guilty as a principal; and the case was tried, and the jury instructed upon that theory. Special charges on manslaughter and suspended sentence were asked, but looking to the same, we nowhere find any statement as to when they were presented to the court, and in this condition of the record, acting upon the presumption that the trial court followed the law, we will have to uphold his action in refusing said charges, for the reason that the same came too late, if for no other reason.

Believing that the issues raised by the testimony were all comprehended within the charge on principals, and that no charge on manslaughter was demanded, and regretting our inability to agree with able counsel for appellant, the motion for rehearing is overruled.

*Overruled.*